UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

IN RE:

BLACK DIAMOND MINING COMPANY, LLC, et al.        CASE NOS. 08-70066, 08-70067

DEBTORS                                          and 08-70069 through 08-70073

                                                                                                                              Chapter 11
                                                                                                                               Jointly Administered

**MEMORANDUM OPINION**

      This matter is before the court on the Motion of Prater Creek Coal Corporation ("Prater Creek") for Order Compelling Black Diamond Land Company, LLC to Timely Perform All of Its Obligations Under a Coal Loading Facilities Sublease Agreement Pending Assumption or Rejection and for Order Requiring Debtor to Assume or Reject Such Agreement by No Later Than July 9, 2008 ("the Prater Creek Motion")(Doc. # 551).  Also before the court is the Motion of Bull Creek Coal Corporation ("Bull Creek") and Floyd County Resources, Inc. ("FCRI") for Order Compelling Black Diamond Land Company, LLC to Time Perform All Obligations Under Sublease Agreement Pending Assumption or Rejection and for Order Requiring Debtor to Assume or Reject Such Agreement by No Later Than July 9, 2008 ("the Bull Creek Motion")(Doc. # 552).  The Debtors have filed an Objection to the Prater Creek and Bull Creek Motions ("the Objections")(Doc. # 569), and Prater Creek and Bull Creek have filed a Reply to the Objection ("the Reply")(Doc. # 663).  Prater Creek, Bull Creek, and FCRI will sometimes collectively be referred to as "the Movants."

      Creditor CIT Capital USA, Inc. ("CIT") also filed an Objection to

the Bull Creek Motion and the Prater Creek Motion (Doc. # 806). The court conducted a hearing on September 15, 2008, and overruled CIT's Objection without prejudice to the extent it was based on claims of subordination, the court having determined that such claims required the filing of an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001.

1.    Factual and procedural background

On February 19, 2008, involuntary Chapter 11 petitions were filed against each of the Debtors. The Debtors are operating their respective businesses and managing their respective properties subject to the management of the court-approved Chief Restructuring Officer of each of the Debtors, Ira Genser. An order for relief was entered by the court on March 11, 2008 (Doc. # 137).

Black Diamond Resources, LLC ("BDR") was organized in 2003. In 2005 it caused Black Diamond Land ("BDL") and Black Diamond Mining Company, LLC ("BDM") to be organized for the purpose of acquiring, developing and managing coal mining operations in Floyd County, Kentucky. BDR owns 100% of the member interests in BDL and BDM. BDR, Bull Creek, and FCRI entered into a Stock and Asset Purchase Agreement dated December 17, 2005, which agreement was later amended by various documents (collectively, "the Purchase Agreement").

In conjunction with the Purchase Agreement transaction, Prater Creek and BDL entered into the Facilities Sublease Agreement. Under the Facilities Sublease Agreement, Prater Creek subleased to BDL certain property and a coal loading facility known as the Ivel unit train, located near Ivel, Floyd County, Kentucky ("the Ivel Facility"). Under various paragraphs of the Facilities Sublease

Agreement, BDL is required to pay Prater Creek certain minimum monthly rents. BDL prorated its obligations under the Facilities Sublease Agreement for the period from February 20-29, 2008, paying $34,793.10 of the $100,900.00 owed under paragraphs 3 and 4 of the Facilities Sublease Agreement.

Also in conjunction with the Purchase Agreement transaction, Bull Creek and FCRI (collectively, "the Sublessors") and BDL entered into a Sublease Agreement. Bull Creek is a current lessee or sublessee under 34 leases and/or subleases; FCRI is a current lessee and/or sublessee under 10 leases or subleases (collectively, "the Base Leases"). The tracts or parcels of land subject to the Base Leases constitute the Subleased Property. One of the Debtors, Turner Elkhorn Mining Company, has interests in certain tracts or parcels of land in Floyd County ("the Additional Property," and together with the Subleased Property, "the Property").

The Sublessors leased the Property to BDL, and pursuant to the Sublease Agreement, BDL is required to pay all royalty, rental and other payments required to be paid under the Base Leases. Shortly prior to the filing of these cases, BDL defaulted on its monetary and non-monetary obligations under paragraph 4 of the Sublease Agreement and the Sublessors gave it written notice of default. The default notwithstanding, the Sublessors state that they have continued to perform their obligations under the Base Leases. Under paragraph 4 of the Sublease Agreement BDL incurred certain monetary obligations to the Sublessors in the month of February 2008 totaling $185,935.46. BDL prorated its obligations under the Sublease Agreement, and tendered $71,773.24 to the Sublessors for the period February 20, 2008

3

to February 29, 2008.

The Sublessors also state that BDL owes them an additional production royalty in the amount of $2,321.86 on account of mining in February 2008 and $189,873.71 in post-petition tax obligations that are the responsibility of BDL under the Sublease Agreement. The Sublessors state that they have paid these tax bills. The Sublessors have sought reimbursement from BDL, but have not been paid the $189,793.71 they advanced to pay the tax bills.

   2.   Discussion

Prater Creek maintains that the Ivel Facility is "nonresidential real property" within the meaning of Bankruptcy Code section 365(d)(3). Similarly, the Sublessors maintain that the Sublease Agreement is "an unexpired lease of nonresidential real property" within the meaning of that subsection. Section 365(d)(3) of the Code provides:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

11 U.S.C. § 365(d)(3). The Movants contend that this language requires BDL to pay the sums claimed in their Motions to Compel, as set out above.

The Movants argue that the use of the word "obligation" rather than "claim" in section 365(d)(3) is significant. Citing *Centerpoint Props. v.*

*Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205 (3rd Cir. 2001), they state that an obligation is something that a party is legally required to perform, and that in the context of the Facilities Sublease Agreement, an "obligation" is something that BDL is "legally required to perform" thereunder and such an obligation arises when BDL becomes "legally obligated to perform." *Id.* at 209. They further argue that the "notwithstanding section 503(b)(1)" language contained in section 365(d)(3) makes it clear that the "obligations" under the Facilities Sublease Agreement are to be performed in spite of the operation of section 503(b)(1), which would otherwise limit administrative expense treatment of post-petition payments to those which constitute "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. §503(b)(1).

The Movants urge the court to adopt the so-called "billing date approach" employed in *Montgomery Ward Holdings, supra* and related cases, including *In re Valley Media, Inc.*, 290 B.R. 73 (Bankr. D. Del. 2003); *In re DeCicco of Montvale, Inc.*, 239 B.R. 475 (Bankr. D.N.J. 1999); and *In re R.H. Macy & Co., Inc.*, 152 B.R. 869 (Bankr. S.D.N.Y. 1993). These cases, espousing what is acknowledged as the minority view, generally hold that obligations which come due during the postpetition, pre-rejection period in regard to a lease of non-residential real property must be timely paid in full, regardless of whether some of the obligations fall within the postpetition period. Under this line of cases, the Movants contend that BDL is required to pay all rent and other obligations which became due under the Facilities Sublease Agreement from and after March 11, 2008, and that BDL is required to pay all minimums, production royalties, property taxes and other obligations under the Sublease Agreement from and after

5

March 11, 2008.

The Debtors' Objections state that the payments requested in the Prater Creek and Bull Creek Motions clearly relate to occupancy that took place before the order for relief was entered. They argue that under relevant Sixth Circuit and other case law, none of the items for which payment is requested fall within the scope of section 365(d)(3). Such cases hold that lease obligations billed in arrears should be prorated between amounts that accrued before and after the order for relief for purposes of determining a debtor's obligation to pay pursuant to section 365(d)(3). The Debtors point out that all the amounts sought here accrued prior to March 11, 2008, and contend that provisions such as section 365(d)(3) result in the priority treatment of claims and must therefore be narrowly interpreted to avoid prejudice to unsecured creditors.

The Debtors cite *Vause v. Capital Poly Bag, Inc.*, 886 F.2d 794 (6th Cir. 1989) and *Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.)*, 203 F.3d 986 (6th Cir. 2000) in support of their position that when rental and other lease obligations are billed in arrears, the proration/accrual rule should apply to determine whether a particular obligation is payable under section 365(d)(3). Under this rule, they contend, an obligation's due date should not convert a prepetition claim into a postpetition obligation to be paid under section 365(d)(3).

*Vause* does not deal with section 365(d)(3) issues, but with a claim for unpaid prepetition rent pursuant to section 502(b)(6)(B). The rent on a farm lease was due each year in arrears to allow the debtors to harvest their crops and sell them before paying the rent. The debtors filed their Chapter 11 petition, along with a motion to reject the lease, on November

27, 1985, four days before the rent was due. They then argued that the entire payment for December 1984 through November 1985 became due postpetition and fell outside the scope of section 502(b)(6)(B). The Sixth Circuit found this argument to be based on a narrow, technical reading of the statute and rejected it. The court interpreted section 502(b)(6)(b) in the context of the formula for rejection damages set out in all of section 502(b)(6), and concluded that the rent should be prorated. *Id.* The Debtors maintain that this reasoning, although enunciated in the context of section 502(b)(6), is instructive here.

In *Koenig*, the debtor was required to pay monthly rent in advance under the terms of a non-residential real property lease even though it rejected the lease on the second day of the month. The court stated that under the terms of the lease "[t]he specific obligation to pay rent for December 1997 arose on December 1 which was during the postpetition, pre-rejection period. Under these circumstances, §365(d)(3) is unambiguous as to the debtor's rent obligation and requires payment of the full month's rent." *In re Koenig Sporting Goods, Inc.*, 203 F.3d at 989. The court then went on to point out that the date of election to reject the lease was under the complete control of the debtor, and that equity as well as the statute compelled full payment to the lessor. *Id.* The Debtors here state that on account of the involuntary filing, BDL had no control over either the petition date or the date of order for relief. It further had no control over the dates on which Bull Creek would seek reimbursement of the tax payments it now seeks. The Debtors contend that, in light of these facts, the court should apply the proration rule to the prepetition sums sought here.

The Debtors maintain that lower court decisions have construed *Vause*

and *Koenig* as creating different rules for lease obligations payable in advance and those payable in arrears, consistently applying the proration rule to lease obligations payable in arrears.  They cite *In re Phar-Mor, Inc.*, 290 B.R. 319 (Bankr. N.D. Ohio 2003), *In re Oscar Hornsby, Inc.*, 2001 WL 34083517 (Bankr. E.D. Ky. 2001), and *In re Quaker Coal Co., Inc.*, Case Nos. 00-51374 and 00-51376 – 00-51394 (Bankr. E.D. Ky. Nov. 9, 2000) as examples of such holdings.  In *Phar-Mor*, for instance, the court held that "[p]rorating the accrued tax obligations in this case is equitable because debtors in Chapter 11 should be relieved of past expenses that have no present relevance to the present operation of the company."  *Id.* at 328.

In *Hornsby*, the court held that the debtor was obligated to pay only that portion of tax bills which had accrued from the date of the order for relief, the date of the filing of the voluntary Chapter 7 case, until the lease was assumed or rejected.  The court stated that it was "persuaded by the rationale of the majority of courts which hold that a debtor's obligation under a lease of non-residential real property should be prorated to cover the 'postpetition, prerejection period' regardless of the billing date.  *Id.* at *2.  In *Quaker Coal*, sublessors of the debtor sought payment of an annual minimum royalty for a twelve month period which ended just prior to the debtor's filing of its petition.  The court opined that section 365(d)(3) did not cover this situation as the statute's legislative history indicated it was intended to address the special problems of shopping centers.

The Movants maintain that the authority cited by the Debtors is inapposite, and, in any event, the equities weigh in favor of compelling BDL to pay the amounts requested in the Prater Creek and Bull Creek

Motions.  The court, however, agrees with the position set out by the Debtors here, and that the cases support that position.  Proration of the obligations at issue here is most consistent with the case law and with the language of section 365(d)(3) which makes it applicable to obligations "arising from and after the order for relief under any unexpired lease of nonresidential real property."  11 U.S.C. §365(d)(3).  The court will therefore enter a separate order overruling the Prater Creek and Bull Creek Motions.

Copies to:

Michael J. Gartland, Esq.
Kara Read Marino, Esq.
Charles M. Oellermann, Esq. (service by U.S mail)

9

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*William S. Howard*
**Bankruptcy Judge
Dated: Thursday, September 18, 2008
(wsh)**